UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SHA-HEED RAHMAN,                        :
                       Plaintiff,       :
                                        :        08 Civ. 4368 (DLC)
             -v-                        :
                                        :        OPINION & ORDER
COMMISSIONER BRIAN FISHER, DEPUTY       :
COMMISSIONER LUCIEN J. LECLAIRE, DEPUTY :
COMMISSIONER RICHARD ROY, DIRECTOR OF   :
SPECIAL HOUSING VENETTOZZI,             :
SUPERINTENDENT LUIS MARSHALL, FIRST     :
DEPUTY SUPERINTENDENT K. DECKER,        :
HEARING OFFICER MRS. CALERO, OFFICER J. :
TEJEDA                                  :
                       Defendants.      :
                                        :
----------------------------------------X

Appearances:

Pro se Plaintiff:
Sha-Heed Rahman
90-A-0409
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

For Defendants:
Neil Shevlin
State of New York
Office of the Attorney General
120 Broadway
24th Floor
New York, NY 10271

DENISE COTE, District Judge:

    Plaintiff Sha-Heed Rahman ("Rahman"), a former inmate at

Sing Sing Correctional Facility ("Sing Sing"), has sued

Commissioner Brian Fischer, Deputy Commissioner Lucien LeClaire,

Deputy Commissioner Richard Roy, Director of Special Housing

Venettozzi, Superintendent Luis Marshall, First Deputy Superintendent K. Decker (collectively, "supervisory defendants"), Hearing Officer Mrs. Calero ("Calero"), and Officer J. Tejeda ("Tejeda") for use of excessive force and deprivation of due process in violation of his rights under 42 U.S.C. § 1983, the First Amendment, Eighth Amendment, and Fourteenth Amendment of the United States Constitution.  The supervisory defendants now move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).  For the reasons discussed below, the motion to dismiss is granted.

BACKGROUND

The following facts are drawn from the amended complaint of December 31, 2008, and are assumed to be true for the purposes of deciding the motion to dismiss.[1]  On June 4, 2007, Rahman went to the Sing Sing mess hall for lunch and noticed that an officer was serving food.  Upon seeing this, Rahman said to a cook that he understood officers were not supposed to handle food.  Tejeda overheard this comment and called Rahman a "snitch."  After Rahman finished lunch, Tejeda and others assaulted Rahman. Rahman suffered numerous injuries, and as of the filing of his amended complaint, Rahman still experienced back and knee problems.

---

[1] This Opinion also draws facts from Rahman's opposition and surreply.

Rahman alleges his assault was part of a pattern of guards assaulting inmates in Sing Sing's Housing Block B.  In a July 16, 2007 letter to Fischer, which he attaches to the complaint, Rahman notified Fischer "[I]n Housing Block B, you have more use of force and assault on staff going on than any place else." Rahman claims that a review of assault reports from May 1, 2007 to August 1, 2007 for Housing Block B would reveal a pattern of officers on the 7:00 – 3:00 and 3:00 – 11:00 shifts assaulting inmates in the "C.R. Program."[2]  According to Rahman, "over a hundred inmates have been assaulted by officers between June through July and . . . a pattern has developed to cover this up by issuing false misbehavior reports."  Moreover, Rahman says that "complaints of these assaults were sent to Commissioner Fischer . . . and no one did anything to change the behavior of its staff practice of assaulting inmates."  Rahman does not specify whether Fischer had received these complaints prior to Rahman's June 4 assault.

After the assault, Tejeda wrote Rahman a false misbehavior report, which resulted in Rahman being sent to Sing Sing's Special Housing Unit ("SHU").  At Rahman's disciplinary hearing, Hearing Officer Calero prejudged his guilt and refused to allow

---

[2] Rahman does not explain what the C.R. Program was or whether he was a part of it.

Rahman to call inmate Hansberry as a witness.  This hearing
resulted in Rahman remaining in the SHU.

Rahman wrote to the supervisory defendants to complain
about both the assault and the disciplinary hearing process.
Rahman wrote to Fischer on July 2, and July 16, to complain
about the assault and to request that he be interviewed by
someone from the Inspector General's office about the incident.
Someone from that office had come to meet Rahman the previous
month, but did not conduct an interview.  In a July 30 letter to
Fischer, Rahman reiterated his concerns about not having been
interviewed by the Inspector General's office.  This letter also
included a complaint that Superintendent Marshall had refused to
respond to Rahman's discretionary appeal.  On August 23, Rahman
wrote to Fischer to complain about inmate Hansberry not being
allowed to testify at Rahman's hearing.  In addition, Rahman
complained about his troubles to Fischer in person on an
unspecified date.

Rahman also wrote to the other supervisory defendants.  He
wrote to LeClaire to complain that his appeal of the outcome of
the disciplinary hearing had been "rubber stamped" and that he
had not seen anyone from the Inspector General's office.  Rahman
asked Roy to send someone to investigate his assault claim, but
no one from Roy's office came to meet Rahman.  Rahman wrote to
Marshall to request a discretionary review of his hearing.

4

Marshall did not respond.  Rahman sent his appeal to Venettozzi and asked him to listen to the hearing tape.

Rahman filed his original complaint on May 9, 2008.  The supervisory defendants moved to dismiss that complaint on November 13.  On December 31, Rahman filed an amended complaint substituting defendant Venettozzi for Acting Director of Special Housing Keith Dubray.[3]

DISCUSSION

A trial court considering a Rule 12(b)(6) motion must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).

Under the pleading standard set forth in Rule 8(a)(2), complaints must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[A] plaintiff is required only to give a

---

[3] This Opinion assumes that defendants intend all arguments to dismiss this action against Dubray to apply with the same force to Venettozzi.

defendant fair notice of what the claim is and the grounds upon which it rests." Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006).  Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant to impose a great burden upon a plaintiff." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005).  No heightened pleading standard applies to claims brought under Section 1983. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (rejecting a heightened pleading standard for a civil rights claim asserting municipal liability); Iqbal v. Hasty, 490 F.3d 143, 153-59 (2d Cir. 2007).  Section 1983 claims need not be plead with particularity, but may be averred generally.  Leatherman, 507 U.S. at 168.

A court considering a Rule 12(b)(6) motion applies a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (citation omitted).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Rahman makes two claims: one for use of excessive force in the June 4 assault, and one for deprivation of due process in the disciplinary hearing conducted by Calero.  The supervisory defendants move to dismiss the complaint for lack of personal involvement.

Section 1983 provides in part that

> [e]very person who, under color of any statutes, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured.

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages."  Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).

A defendant's conduct must be a proximate cause of the claimed violation in order to find that the defendant deprived the plaintiff of his rights.  Martinez v. California, 444 U.S. 277, 285 (1980).  Proximate cause analysis under Section 1983 incorporates common-law tort causation principles.  Higazy v. Templeton, 505 F.3d 161, 175 (2d Cir. 2007); See also Monroe v. Pape, 365 U.S. 167, 187 (1961) (Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions").

As a consequence, "the doctrine of respondeat superior . . . does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003). As the Supreme Court has explained, the imposition of vicarious liability is "incompatible with § 1983's causation requirement." Reynolds v. Giuliani, 506 F.3d 183, 190-191 (2d Cir. 2007) (discussing municipal liability); see also City of Canton v. Harris, 489 U.S. 378, 385 (1989) (same). To avoid holding a supervisor liable solely for a subordinate's violations a court must apply "rigorous standards of culpability and causation." Jeffes v. Barnes, 208 F.3d 49, 61 (2d Cir. 2000) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 405 (1997)). Thus, it is "well settled" that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citation omitted); accord Pettus v. Morgenthau, No. 07-0395, slip op. 6653, 6663 (2d Cir. Jan. 28, 2009).

The personal involvement and liability of supervisory personnel is established when the supervisory official has "actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." Meriwether v. Coughlin, 879 F.2d 1037, 1048

(2d Cir. 1989) (citation omitted); <u>Blyden v. Mancusi</u>, 186 F.3d

252, 265 (2d Cir. 1999).  Thus, a plaintiff may establish a

supervisor's personal involvement by showing that the

supervisor:

> (1) directly participated in the violation, (2)
> failed to remedy the violation after being informed
> of it by report or appeal, (3) created a policy or
> custom under which the violation occurred, (4) was
> grossly negligent in supervising subordinates who
> committed the violation, or (5) was deliberately
> indifferent to the rights of others by failing to act
> on information that constitutional rights were being
> violated.

<u>Iqbal v. Hasty</u>, 490 F.3d 143, 152-153 (2d Cir. 2007) (citation

omitted).

After the fact notice of a violation of an inmate's rights

is insufficient to establish a supervisor's liability for the

violation.  Receiving post hoc notice does not constitute

personal involvement in the unconstitutional activity and cannot

be said to have proximately caused the damage suffered by the

inmate.  Therefore, a supervisor may be liable for her failure

to remedy a violation only in those circumstances where the

violation is ongoing and the defendant has an opportunity to

stop the violation after being informed of it.  Similarly,

liability may attach when a supervisor fails to act on reports

of a staff member's previous assaults on the plaintiff and the

plaintiff is assaulted again by that same staff member.  <u>Johnson</u>

v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 255 (2d Cir.
2001).

1. Excessive Force Claim

       Rahman alleges that the supervisory defendants are liable
for the June 4 assault because each supervisory defendant
received a letter informing them of the assault after it
happened.  Rahman has failed to state a claim against the
supervisory defendants based on this theory because he fails to
allege that they were personally involved in any conduct that
could be said to have caused the assault.  Receipt of notice
after the violation is insufficient to constitute personal
involvement in the violation.

       Rahman will be permitted to replead his Section 1983
assault claim against the supervisory defendants, however, based
on another theory suggested by his amended complaint.  Rahman
asserts that the guards in Housing Block B had engaged in a
pattern of assaulting inmates in the C.R. Program since May 1,
2007, and that over a hundred inmates were assaulted by officers
between June and July 2007.  To the extent that plaintiff is
able to plead that a pattern of assaults by guards existed prior
to June 4, 2007 that did or should have put supervisory
defendants on notice of a condition that left unaddressed could
be reasonably expected to result in an assault on an inmate such

as Rahman, then he may be able to state a claim for supervisory liability against such defendants.

2. Due Process Claim

The supervisory defendants argue that Rahman does not allege their personal involvement in his deprivation of due process. Plaintiff contends that each supervisory defendant received one or more letters from Rahman complaining about his disciplinary hearing process and asking them to rectify defects in that process. These contentions do not allege that any of the supervisory defendants was personally involved in the hearing violations themselves. The motion to dismiss the due process claim against these defendants is therefore granted.

CONCLUSION

The motion to dismiss defendants Fisher, Roy, Venettozzi, Marshall, and LeClaire on the grounds of lack of personal involvement is granted. Plaintiff may file a second amended complaint by June 5, 2009, repleading his excessive force claim against supervisory defendants to the extent he is able to allege a defendant's personal knowledge of a pattern of assaults

prior to June 4, 2007 that put the defendant on notice of a risk to inmates such as Rahman.

SO ORDERED:

Dated:     New York, New York
           April 7, 2009

                                    _____
                                         DENISE COTE
                                  United States District Judge