```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SHA-HEED RAHMAN,                        :
                    Plaintiff,          :
                                        :
            -v-                         :   08 Civ. 4368 (DLC)
                                        :
COMMISSIONER BRIAN FISCHER, DEPUTY      :       OPINION
COMMISSIONER LUCIEN J. LECLAIRE, DEPUTY :       AND ORDER
COMMISSIONER RICHARD ROY,               :
SUPERINTENDENT LUIS MARSHALL, FIRST     :
DEPUTY SUPERINTENDENT KENNETH DECKER,   :
DIRECTOR OF SPECIAL HOUSING VENETTOZZI, :
SERGEANT E. MENDEZ, SERGEANT PAULTER,   :
HEARING OFFICER CALERO, OFFICER         :
ACEVEDO, OFFICER DAWKINS, OFFICER       :
LASHLEY, OFFICER MAYFIELD, OFFICER      :
SMITH, OFFICER J. TEJEDA, CIVILIAN COOK :
JOHN SULLIVAN,                          :
                    Defendants.         :
                                        :
----------------------------------------X
```

Appearances:

Pro se Plaintiff:
Sha-Heed Rahman
90-A-0409
Oneida Correctional Facility
6100 School Road
Rome, NY 13440

For Defendants:
Mary Y.J. Kim
State of New York
Office of the Attorney General
120 Broadway
New York, NY 10271

DENISE COTE, District Judge:

   This Opinion confronts the pleading of supervisory

liability in the wake of Ashcroft v. Iqbal, ___ U.S. ____, 129

S.Ct. 1937 (2009), in a complaint brought pursuant to 42 U.S.C. § 1983.  Sha-Heed Rahman ("Rahman") has sued six supervisors at Sing Sing Correctional Facility ("Sing Sing") and within the New York State Department of Correctional Services ("DOCS"), along with other defendants, for violations of his constitutional rights.  Rahman having been granted leave to amend his pleadings against these supervisory defendants, five of those defendants have renewed their motion to dismiss.[1]  For the following reasons, the motion is granted.

BACKGROUND

The following facts are drawn from the second amended complaint of May 17, 2009, and are assumed to be true for the purposes of deciding the motion to dismiss.  Rahman alleges that he was beaten and subjected to the excessive use of force on June 4, 2007, because he had commented during the lunch period at the Sing Sing mess hall that an officer was improperly handling food.  Corrections officers also filed a false misbehavior report against him.  Rahman asserts that during the ensuing disciplinary hearing, Rahman's guilt was prejudged and he was denied the right to call an inmate witness.  Following the hearing, Rahman wrote several letters to DOCS supervisory officials complaining about the assault and the hearing.

---

[1] Director of Special Housing Venettozzi does not join the motion to dismiss Rahman's second amended complaint.

Rahman filed this action on May 9, 2008, and amended his complaint on December 31.  On April 10, 2009, the motion by six supervisory defendants to dismiss the claims against them was granted.  Rahman v. Fisher, 607 F. Supp. 2d 580 (S.D.N.Y. 2009) ("April Opinion").  Explaining that a plaintiff's claim for a violation of 42 U.S.C. § 1983 could not rest on the doctrine of respondeat superior and required a pleading of personal involvement and proximate causation for the asserted damages, id. at 584-85, the April Opinion granted Rahman leave to replead his § 1983 excessive force claim against the supervisory defendants based on his assertion that the guards in his housing block, Housing Block B, had engaged in a pattern of assaulting inmates in the C.R. Program[2] during the month before June 4, 2007, a pattern which should have put the supervisory defendants on notice of a condition that left unaddressed could be reasonably expected to result in an assault on an inmate such as Rahman.  Id. at 585-86.  The April Opinion advised Rahman,

> To the extent that plaintiff is able to plead that a pattern of assaults by guards existed prior to June 4, 2007 that did or should have put supervisory defendants on notice of a condition that left unaddressed could be reasonably expected to result in an assault on an inmate such as Rahman, then he may be able to state a claim for supervisory liability against such defendants.

---

[2] The defendant explains that the C.R. Program is the Conditional Release Program.

Id. at 586.

Rahman amended his complaint on May 17, 2009. In this second amended complaint, as supplemented by his submissions in opposition to this motion,[3] Rahman makes the following allegations against the five supervisory defendants regarding their knowledge of a pattern of assaults before June 4, 2007.

First, based on Rahman's allegations, it appears that the five supervisory defendants who have filed a motion to dismiss the § 1983 excessive force claim held the following positions during the period immediately preceding June 4, 2007: Brian Fischer ("Fischer") was Commissioner of DOCS;[4] Lucien LeClaire ("LeClaire") was a Deputy Commissioner of DOCS; Richard Roy ("Roy") was a Deputy Commissioner of DOCS and oversaw DOCS's

---

[3] This Opinion has drawn Rahman's allegations regarding these five supervisory defendants from not only Rahman's second amended complaint, but also from an affidavit from fellow inmate Raymond Sprinkler dated August 27, 2009, three submissions filed by Rahman in opposition to this motion dated September 24, October 2 and October 9, and two surreplies by Rahman dated December 14 and 15, 2009. The plaintiff was given permission to file a surreply to describe any facts that would support supervisory liability under Iqbal, 129 S.Ct. 1937, which was decided by the Supreme Court after Rahman filed his second amended complaint.

[4] Rahman's assertions against Fischer straddle Fischer's term as Commissioner of DOCS and his prior appointment as Superintendent of Sing Sing. The biography of Fischer on the DOCS website indicates that he was appointed Acting Commissioner of DOCS effective January 1, 2007, and was confirmed as Commissioner on March 12, 2007. See Commissioner Brian Fischer, http://www.docs.state.ny.us/bfbio.htm (last visited Mar. 19, 2010).

4

Office of Inspector General; Luis Marshall ("Marshall") was Superintendent of Sing Sing; and Kenneth Decker ("Decker") was the First Deputy Superintendent of Sing Sing.  Since the second amended complaint only alleges a claim against Decker for violation of Rahman's due process rights, that claim is beyond the scope of the permitted amendment and is dismissed.[5]

    Rahman alleges that in some unspecified period of time prior to June 4, 2007, Fischer, as Superintendent of Sing Sing, had received over sixty complaints alleging that staff members had assaulted inmates in Housing Block B, and had forwarded those complaints to DOCS's central office.  Also before June 4, 2007, as Commissioner, Fischer had received over sixty complaints about staff assaulting inmates and writing false misbehavior reports at Sing Sing.  By doing nothing about the assaults, Fischer created "an unwritten policy that it[']s okay to assault inmates because nothing will happen to [the staff]."

---

[5] The April Opinion did not give Rahman leave to replead any claim against the six supervisory defendants other than the excessive force claim premised on a theory that they had notice of a pattern of assaults that preceded the attack on Rahman and that that pattern would support an assertion of personal involvement in the assault on Rahman.  Specifically, Rahman was not given leave to replead the due process claim against these defendants since the after-the-fact complaints to them about the hearing did not allege personal involvement in the hearing violations.  April Opinion, 607 F. Supp. 2d at 586.  Therefore, to the extent that Rahman's second amended complaint seeks to allege a violation of his due process rights by either Kenneth Decker or Richard Roy, those claims are dismissed as beyond the scope of the permitted amendment.

Rahman asserts that LeClaire received several complaints of Sing Sing staff assaulting prisoners in the C.R. Program and was responsible for investigating them for the Commissioner. LeClaire "turned a blind eye" to these assaults.

Rahman asserts that Roy also turned a blind eye to the high volume of reports being sent to his office regarding assaults by staff in Housing Block B prior to June 4, 2007.  As the official in charge of the inspector general's office, Roy knew of the incidents and acted to cover them up.  Rahman alleges that Roy or his office are biased in favor of law enforcement and arrange for complaints about officer assaults to be misplaced, as Rahman alleges happened with a complaint he submitted to Roy's office. Roy also failed to notice a pattern of assaults emerging from these complaints and to inform the Commissioner of the high volume of assaults by staff in Sing Sing's Housing Block B.

Rahman asserts that on and before June 4, 2007, Marshall's office had received more than fifty use of force reports from Housing Block B, which was four times the volume of reports generated from any other housing block at Sing Sing.  Rahman alleges that Marshall "turned a[] blind eye to this misbehavior" and "knew that their [sic] was a problem in Housing Block B yet he chose not to do anything about" it.

DISCUSSION

On September 16, 2009, the five supervisory defendants renewed their motion to dismiss the claims against them. They assert that the amended claims do not state a claim and that Rahman also failed to exhaust his administrative remedies for these claims under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). The motion was fully submitted on January 29, 2010.

The supervisory defendants first assert that Rahman's allegations about their knowledge of a pattern of assaults and failure to intervene to stop that pattern do not adequately plead a violation of § 1983 for supervisory defendants. "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1949. For a plaintiff's claim to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (citation omitted)). Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

A court considering a motion to dismiss pursuant to Rule 12(b)(6) "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted). Moreover, pleadings filed by pro se plaintiffs are to be construed liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1949-50 (quoting Twombly, 550 U.S. at 557, 555).

In this case, the supervisory defendants argue that the plaintiff's excessive force claims pursuant to § 1983 must be dismissed because they are nothing more than "naked assertions," Iqbal, 129 S.Ct. at 1949, and because the supervisory defendants were not personally involved in any constitutional wrongdoing. Section 1983 provides in part that

> [e]very person who, under color of any statutes, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured.

8

42 U.S.C. § 1983.

As discussed in the April Opinion, a court must apply "rigorous standards of culpability and causation" to a plaintiff's allegations in order to avoid holding a supervisor liable solely for the wrongdoing of a subordinate. April Opinion, 607 F. Supp. 2d at 584-85 (citation omitted). The Second Circuit has held that a supervisory official may be personally involved in a violation of constitutional rights when the supervisor has:

> (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated.

Iqbal v. Hasty, 490 F.3d 143, 152-153 (2d Cir. 2007) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)), rev'd on other grounds sub nom. Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

As the April Opinion explained, each of the Colon categories must supported by evidence that the supervisory defendant's conduct proximately caused the violation. April Opinion, 607 F. Supp. 2d at 584. Thus,

> [a]fter the fact notice of a violation of an inmate's right is insufficient to establish a supervisor's liability for the violation. Receiving post hoc notice does not

9

> constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered by the inmate.  Therefore, a supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it. Similarly, liability may attach when a supervisor fails to act on reports of a staff member's pervious assaults on the plaintiff and the plaintiff is assaulted again by that same staff member.

Id. at 585 (citation omitted).

In Iqbal, which was decided after the April Opinion, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S.Ct. at 1948 (emphasis added).  The Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," because that "conception of 'supervisory liability' is inconsistent with [the principle that supervisors] may not be held accountable for the misdeeds of their agents."  Id. at 1949.  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  Id.

10

The Second Circuit has not yet addressed how Iqbal affects Colon's five categories of conduct that may give rise to supervisory liability.  Some district court judges in this Circuit have observed that Iqbal has narrowed the grounds upon which supervisors may be held liable.  For instance, the Honorable Shira Scheindlin has opined that only the first and third Colon factors survive Iqbal:  direct participation in the violation and the creation of a policy or custom under which the illegal practices then occurred.  Spear v. Hugles, No. 08 Civ. 4026 (SAS), 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009).  See also Young v. N.Y. Office of Mental Retardation and Dev. Disabilities, No. 07 Civ. 6241 (LAK), 2009 WL 2749783, at *6, -- F. Supp. 2d --- (S.D.N.Y. Aug. 27, 2009).  But see Sash v. United States, No. 08 Civ. 8332 (AJP), 2009 WL 4824669, at *11 (S.D.N.Y. Dec. 15, 2009) (noting that Iqbal addressed intent-based constitution claim and that Colon factors may still apply where the constitutional claim does not require a showing of discriminatory intent).

Assuming that all five categories described in Colon remain appropriate grounds for imposing liability on supervisors when there are sufficient allegations that the supervisors' conduct proximately caused the violation of rights, Rahman has again failed to allege that any of the four supervisory defendants may be liable for the use of excessive force against him on June 4,

11

2007.  Despite the specific guidance in the April Opinion, he has not pleaded a plausible claim that any of these defendants was on notice of a condition in the period prior to June 4, 2007, that could reasonably be expected to result in an assault on an inmate like Rahman if left unaddressed.

Rahman does not allege that Fischer held the post of Superintendent close enough in time to the June 4, 2007 assault such that Fischer's failure to act on any knowledge that he had of a pattern of assaults while Superintendent could be said to have proximately caused the conditions that led to Rahman's assault.  Rahman's allegations against Fischer with respect to Fischer's time as Commissioner do not adequately plead Fischer's personal involvement because Rahman does not allege that the reports Fischer received as Commissioner were from Sing Sing's Housing Block B.  Without more, Rahman has not sufficiently pleaded Fischer's knowledge of a condition that might lead to an assault of an inmate like Rahman.

The excessive force claim against LeClaire must be dismissed as well.  Rahman alleges only that LeClaire received "several" complaints of staff assaulting prisoners.  This is an insufficient allegation of notice of any policy or custom of assaults by correction officers.

The excessive force claim against Roy fares no better.  Rahman's allegations against Roy rest on complaints sent to

Roy's office and bias by unnamed investigators in Roy's office. This is not a sufficient allegation of personal involvement.

Finally, the excessive force claim against Marshall must be dismissed for the same reason. Rahman alleges that, as Superintendent of Sing Sing in the period just before June 4, 2007, Marshall was aware of a large number of assaults in Housing Block B because his "office" received fifty reports of assaults on staff prior to June 4, 2007. Without alleging that Marshall was personally on notice of a condition that could reasonably lead to an assault of an inmate like Rahman, Rahman has failed to state a claim against Marshall.[6]

---

[6] In his opposition to this motion, Rahman asks that this Court inspect the Unusual Incident Reports that were sent to DOCS's Inspector General's Office to determine how many of these reports concerned assaults on inmates housed in Block B as compared to other housing units in Sing Sing. Rahman believes that a review of these reports would show that defendants Fischer and Marshall had knowledge of a pattern of assaults. "[A] plaintiff whose complaint is deficient under Rule 8 . . . is not entitled to discovery." South Cherry Street, LLC v. Hennessee Group LLC, 573 F.3d 98, 114 (2d Cir. 2009) (citation omitted). The request is denied.

13

CONCLUSION

The September 16, 2009 motion to dismiss the second amended complaint against defendants Fischer, Marshall, Decker, LeClaire, and Roy is granted.

SO ORDERED:

Dated:   New York, New York
         March 22, 2010

                                    _____
                                              DENISE COTE
                                    United States District Judge

COPIES SENT TO:

Sha-Heed Rahman  
90-A-0409  
Oneida Correctional Facility  
6100 School Road  
Rome, NY 13440

Mary Y.J. Kim  
State of New York  
Office of the Attorney General  
120 Broadway, 24th Floor  
New York, NY 10271-0332

Magistrate Judge Maas